UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

REBECCA FINLEY,

       Plaintiff,

v.                                                                          Case No. 2:07-cv-236
                                      HON. R. ALLAN EDGAR

MANOR CARE OF KINGSFORD, MI,
L.L.C., a Limited Liability Corporation,

       Defendant.

_____/

**MEMORANDUM**

      This action comes before the court on cross-motions for summary judgment.  [Court Doc.

Nos. 32, 35].  Plaintiff Rebecca Finley brings claims against her former employer, Defendant

Manor Care of Kingsford, MI, LLC ("Manor Care") for alleged violations of the Family Medical

Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA").  Plaintiff claims that Manor Care interfered

with her rights pursuant to the FMLA and alleges that the company constructively discharged

her.  She moves for summary judgment on her FMLA claim.  [Court Doc. No. 32].

      Defendant Manor Care opposes Plaintiff's motion for summary judgment and moves for

summary judgment as well.  [Court Doc. No. 35].  The court has reviewed the record, the

arguments of the parties, and the relevant statutory provisions, regulations, and caselaw.  Based

on this analysis, the court has determined that it will **DENY** both motions for summary

judgment.

     **I.**      **Background**

      Although the parties agree on many relevant facts, they disagree regarding a crucial set of

material facts.  It is this critical dispute of fact that makes it impossible for this court to grant

summary judgment to either party. The parties appear to agree that Manor Care is an employer covered by the FMLA. Prior to the events at issue in this action, Plaintiff had been working for approximately 3 years at Manor Care as a certified nurse's aide ("CENA"). Her date of hire was April 27, 2004. [Court Doc. No. 35-22]. The parties do not appear to dispute that Plaintiff was a competent employee whom Manor Care wished to keep in its employment. *See* [Court Doc. No. 33-2; Court Doc. No. 35-4, Declaration of Robin Matchett ("Matchett Decl."), ¶ 13]. Prior to the events in question, Plaintiff was pregnant and Manor Care was accommodating her medical need to have one day off of work between every two sequential days of work. *See* [Court Doc. No. 33-4, Court Doc. Nos. 33-3, 35-16, Deposition of Rebecca Finley ("Finley Dep."), p. 87]. The parties also do not appear to dispute that Plaintiff was an employee eligible for FMLA leave for a valid qualifying reason, and Manor Care fully expected to provide Plaintiff with a leave of absence for the birth of her child following the events in question. [Court Doc. No. 33-5, Defendant's Answers to Plaintiff's First Set of Interrogatories; Matchett Decl., ¶ 14].

The crux of the dispute between the parties lies in their versions of the events taking place on Monday, February 12, 2007. Here, the two parties are diametrically opposed in their perspectives on the events which transpired.

Plaintiff's complaint and her deposition testimony provide her version of the events. Her complaint alleges:

> On Thursday, February 8, 2007, Lee Crandall called plaintiff to tell her that their son, Antonio was not looking good, had swollen glands and was generally sick. Lee Crandall dropped Antonio off at plaintiff's home soon after. In the early morning hours of February 9, 2007, Antonio's condition worsened and plaintiff took him to the emergency room. Antonio remained at the hospital for some hours before being released. Late Friday night or early Saturday morning, Antonio again took a turn for the worse and was brought back to the hospital

where he was admitted as a patient.  Antonio remained in the hospital until
February 14, 2007.  The plaintiff was scheduled to work on Friday, February 9,
2007 and Saturday, February 10, 2007.  Early Friday morning, the plaintiff called
the defendant nursing home and told them about the condition of her son and that
she would have to miss work.  Friday night she was forced to do the same for her
Saturday shift because of Antonio's condition.  The plaintiff had Sunday,
February 11, 2007, off of work.  On Monday, February 12, 2007, the plaintiff
reported to work with a copy of some medical documentation regarding her son's
condition, and requested leave to care for her son.  She spoke with the defendant
and showed medical documentation of her son's condition, which consisted of a
letter from a nurse at the hospital.  Defendant informed the plaintiff that she could
not take any more time off of work and denied her request for leave.  Defendant
also produced a document for the plaintiff to sign that was an agreement on behalf
of the plaintiff not to take any time off of work for the next thirty (30) days lest
she be terminated.  The plaintiff refused to sign the document because she needed
time off to care for her son Antonio, who at the time was still in the hospital.  The
plaintiff was also about six (6) months pregnant at the time and couldn't guarantee
that she wouldn't need pregnancy related time off within the next thirty (30) days.
Defendant then informed the plaintiff that not signing the document is choosing
not to work and crossed the plaintiff's name off of the assignment sheet at the
nursing home.  Soon after, the plaintiff received her last paycheck from Manor
Care Nursing Home.

[Court Doc. No. 1-2, Complaint, ¶¶ 8-25].

In her deposition Plaintiff described what happened after her son "became sick" and was

"admitted and discharged from the emergency room."  Finley Dep., p. 33.  In her words, the

situation leading to her loss of her position at Manor Care occurred in this way:

I called a charge nurse – the midnight charge nurse.  I was going to call in.  Her
name is Fran, . . . .  And she advised me that I would have to speak to my
supervisor for my calling in.  I said my hus– my son was admitted, I don't know
the diagnosis.  She says, "Just – you need to talk to her."
        So that morning I waited for my ex-husband to get off from work, because
he's a police officer for Public Safety, so he could stay with my son so I could
discuss this with Robin Matchett.  I went into Manor Care.  Robin Matchett was
standing at the nurse's station.  I approached her and I handed her a letter that I
got from the doc– the nurses on duty and the doctor.  And I explained that my son
was admitted at the hospital and she said, "What would you like?"  I said, "I need
to speak with Tanya Hiltonen to get family leave."  She says – she grabbed the
paper.  She looked at it.  She says, "Are you going to be able to work?"  I said,

"No."  "What's going on?"  I said, "They found glucose in his urine.  We didn't know what was going on."  She reached over for the drawer, she signed some – signed her name, put the date, she says, "I need you to read this."  And it's – and so I read just part of it and it says there if I called in for the next 30 days that I will be terminated.  I said, "I cannot sign this because I'm putting myself in a situation that I would probably call in."  And she said, "Well, I guess you're choosing not to work."  I said, "I'm not choosing how to – not to work."  And I said, "I" – I just looked at her and she looked at me, reached down on the assignment sheets where our names are for the next week or two and she started crossing me off. . . .

And [Ms. Matchett] says, "What – when do you – are you going to be back for Tuesday?"  I said, "I don't know."  And that was it.  She just continued to cross me down. . . .

Finley Dep., pp. 34-35.  During her deposition, plaintiff admitted that her son was not in the hospital until February 14th, as she had alleged in her Complaint.  *Id.* at 65.  Plaintiff contends that her son was "in and out but he wasn't admitted overnight" and that he was "[g]oing back and forth to the doctor's and that's – I kept him home. . .  we kept him home for a week because they put him on steroids so Dr. Darling had to keep an eye on him.  Renal failure runs in my family.  That's why it was one of our concerns."  *Id.*  Plaintiff testified that her son was actually released from the hospital on the evening of February 12th after spending the night there and that he visited his physician about three times during the week after his release from the hospital.  *Id.* at pp. 65-66.

Plaintiff was not scheduled to work on Monday, February 12th when she came in personally to speak to Ms. Matchett, the Director of Nursing at Manor Care.  *Id.* at p. 66; Matchett Decl., ¶ 2.  With respect to her son's diagnosis, Plaintiff testified, "he was having seizures, fevers – spiked fevers, . . . kidney failure runs in my family.  He was – glucose was found in his urine.  He wasn't even properly diagnosed so I wasn't sure how long his stay was going to be in the hospital.  I had no clue what was going on."  *Id.* at p. 68.  Plaintiff allegedly

-4-

informed Ms. Matchett that her son was in the hospital and that she did not know when he would

be released.  *Id.* at 93-94.  Plaintiff believed she was being asked to choose her job over her son's

health and that she would be fired for refusing to work.  *Id.* at p. 99.  Plaintiff alleges that Ms.

Matchett fired her on February 12th and crossed her off the assignment sheet.  *Id.*  Dickinson

County Healthcare records indicate that Plaintiff's son, Antonio,[1] was admitted to the hospital on

both February 9, 2007 and on February 11, 2007.  [Court Doc. No. 33-7].  The physician's notes

also confirm that Antonio had a high fever that was not responding to Tylenol or Motrin and that

he had a history of febrile seizures.  [Court Doc. No. 33-12].  The record is somewhat confusing

regarding the exact schedule of Antonio's inpatient care.  However, it appears that Plaintiff

confirmed that on "Thursday, February 8th he was treated but not admitted, given the IV, given

treatment, brought home.  The pediatrician [saw] him Friday morning and then [Plaintiff took]

him to the hospital Friday morning where he was admitted."  Finley Dep., p. 60.  Plaintiff

testified that although she and her ex-husband checked their son into the hospital on two separate

occasions, he was only kept overnight on one of those visits.  *Id.*  The parties agree that

Plaintiff's son was released from the hospital by the evening of February 12th.  *Id.* at p. 61.

Not surprisingly, Manor Care has a different version of the events that transpired on

February 12th.  Manor Care provides as support a typewritten note dated February 12, 2007

written by Robin Matchett as evidence that Manor Care did not terminate Plaintiff.  The note

states:

Rebecca Finley came up to me at the upper level nurses station.  She presented me

---

[1]        Plaintiff's son's name appears in the record as both Antonio and Anthony.  For consistency, the court will use the name Antonio because it is the name used in Plaintiff's Complaint.

with a handwritten note apparently indicating her son had been hospitalized and her presence was required to take care of him.  She then stated that because of this she would need to resign.  I asked her if she was interested in taking a medical leave of absence due to her sons [sic] illness and she said she wanted to resign.  I asked her then if she would put that in writing and she stated that her husband would bring that by tomorrow.  I asked her then if she was going to give us any notice and she replied no.  She then went downstairs and emptied out her locker and left the facility.
Robin.

[Court Doc. No. 35-2].  Ms. Matchett further asserts in her affidavit:

That Manor Care does not have any sort of carbon-copy document with boxes to check on the side and pre-typed information as Ms. Finley has described.
That I would not and never did keep any type of discipline or last chance agreement in a drawer at the nurses' station.
That I would need approval from the Administrator or Human Resources before drafting a last chance agreement for an employee.
That I always made sure an additional witness was present when presented [sic] disciplines to employees.
That it was my regular practice to dispense discipline in my office.
That I did not scratch Ms. Finley's name off any assignment sheets.
That I did not threaten to suspend Ms. Finley for absenteeism.
That at the time of her resignation, Ms. Finley was on her first written warning for attendance violations and there would be no reason to make her sign a last chance agreement regarding attendance.
That I offered Ms. Finley Family Medical Leave and she refused it and indicated that she was resigning without notice.
That I did not want to lose Ms. Finley and her resignation without notice left Manor Care short handed and put the facility in a bind.
That it was my understanding that Ms. Finley was set to take FMLA leave upon the birth of her child.
That I would have no reason to deny leave to Ms. Finley especially since she was going to be taking leave anyway.
That I have taken FMLA leave and have never denied a FMLA leave request from an employee.
That I did not deny Rebecca Finley Family Medical Leave, did not interfere with any of her rights under the FMLA, and did not retaliate against her in any way.

Matchett Decl., ¶¶ 4-17.  Manor Care asserts that Plaintiff did not utilize the normal procedure

for requesting FMLA leave even though she had taken FMLA leave in the past.

-6-

The record reveals that following her final day of employment with Manor Care, Plaintiff accepted a part-time position as a CENA with Hyland Nursing Home.  [Court Doc. No. 35-9].  Her employment records with Hyland Nursing Home indicate that Plaintiff expressly sought a part-time position of only three days of work per week.  *Id.*  She testified in her deposition, however, that she had sought full-time employment, but that no company had offered her full-time employment.  Finley Dep., p. 80.  She further indicated that she was continuing to look for full-time employment.  *Id.* at p. 81.

## II.   Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations.  The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435.  The moving party is entitled to summary judgment if the nonmoving party fails to

-7-

make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof.  *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36.  If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment.  *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

### III.   Analysis

The FMLA provides eligible employees with up to "12 workweeks of leave during any 12-month period" for various reasons, including "to care for . . . a son . . . if such . . . son has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  An employee eligible for leave under the FMLA is one who has "been employed –(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. § 2611(2)(A).  In this case the parties agree that Plaintiff was an eligible employee under the FMLA.  [Court Doc. No. 33-5].  In the 12-month period prior to her request for leave, Plaintiff had worked 2,125 hours.  *Id.* at p. 2.

The statute defines a "serious health condition" as "an illness, injury, impairment, or

physical or mental condition that involves–(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). As the Sixth Circuit has noted, "Congress enacted the FMLA because, among other reasons, 'there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods.'" *Cavin v. Honda of America Manuf. Inc.*, 346 F.3d 713, 719 (6th Cir. 2003) (quoting 29 U.S.C. § 2601(a)(4)). However, "'to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave.'" *Id.* at 723 (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)).

The Act prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). Further, the FMLA provides that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). An employee who believes her rights under the FMLA have been violated may file suit in federal court. 29 U.S.C. § 2617. An injured employee may receive damages and equitable relief for violation of 29 U.S.C. § 2615. 29 U.S.C. § 2617(a)(1).

The Department of Labor ("DOL") has promulgated numerous regulations intended to explain many of the entitlements and obligations under the FMLA. For instance, the regulations explain employee protections under the Act in relevant part:

> Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act. "Interfering with" the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. . . .

29 C.F.R. § 825.220(b).

-9-

In this action Plaintiff claims that Manor Care "willfully interfered with plaintiff's ability to take leave and constructively discharged her from employment thus violating her rights under the FMLA, 29 U.S.C. § 2601." Complaint, ¶ 27. Plaintiff argues that she is entitled to summary judgment on both an interference and a retaliation theory. Manor Care argues that Plaintiff did not adequately plead an FMLA retaliation claim. However, with respect to FMLA claims, the Sixth Circuit has rejected "an overly rigid approach which stands in conflict with our notice-pleading system." *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 446 (6th Cir. 2007). In *Wysong* the Sixth Circuit noted that:

> [a] defendant looking at [plaintiff's] complaint would be on sufficient notice that she was broadly alleging violations under 29 U.S.C. § 2615, and that her FMLA claim could encompass either the interference theory, the retaliation theory, or both theories. . . Contrary to the district court's characterization, [plaintiff] has never alleged a new *claim* since filing her complaint. The claim has always been the same one: that [defendant's] actions violated the FMLA. Although we analyze an FMLA claim based on the interference theory differently from one based on the retaliation theory, notice pleading does not box plaintiffs into one theory or the other at the complaint stage of an FMLA action. Thus, [plaintiff] did not forfeit the opportunity to present her FMLA claim under the interference theory.

*Id.* The Sixth Circuit reversed the district court's dismissal of the plaintiff's FMLA claims and determined that the district court should have considered the plaintiff's interference claim. *Id.* at 446-47, 453-54. In the *Wysong* case, the district court described the plaintiff's complaint as one which alleged that the defendant "violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., by terminating her in retaliation for her taking FMLA leave in 2001, and by forcing her to use FMLA leave in May 2003." *Wysong v. Dow Chemical Co.*, No. C2-04-CV-07, 2005 WL 1972550 *3 (S.D. Ohio Aug. 12, 2005).

Similarly, in this case, Plaintiff alleges broad violations of the FMLA and cites to the

entire act rather than any single provision.  She further claims "willful interference" *and* "constructive discharge" in violation of the FMLA.  Thus, the court concludes that Plaintiff has the opportunity to present her claim under both the interference claim and the retaliation theory.

### A.    FMLA Interference Claim

The Sixth Circuit has held that "[t]o prevail on [an] interference claim under § 2615(a)(1), Plaintiff must establish that [defendant] interfered with a FMLA right to medical leave or to reinstatement following FMLA leave."  *Hoge v. Honda of America, Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).  A plaintiff must demonstrate that:

> (1) she was an eligible employee, (2) [the defendant] is a covered employer, (3) she was entitled to leave under the FMLA, (4) she gave [the defendant] notice of her intent to take leave, and (5) [the defendant] denied her FMLA benefits or interfered with FMLA rights to which she was entitled.

*Id. See also, Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

With respect to the first two requirements, the parties agree that Plaintiff was an eligible employee under the FMLA and that Manor Care is a covered employer.  However, in its reply brief, Manor Care argues that Plaintiff's son did not suffer from a "serious health condition," and thus, she did not have a qualifying reason for leave.

The DOL has expanded on the definition of a "serious health condition" pursuant to the act.  The regulation states in pertinent part:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:
> (1) *Inpatient care* (*i.e.*, an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of *incapacity* (for purposes of this section, defined to mean inability to work, attend school or perform other regular

daily activities due to the serious health condition, treatment therefor, or recovery therefrom), or any subsequent treatment in connection with such inpatient care; or (2) *Continuing treatment* by a health care provider.  A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i) A period of *incapacity* (*i.e.*, inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider. . . .

29 C.F.R. § 825.114.  Manor Care argues that Plaintiff's son was released from the hospital on February 12, 2007, the day her employment at Manor Care ended, after only one overnight stay. He had been admitted to the hospital the Friday before, on February 9, 2007, for a brief stay that did not include an overnight visit.  Manor Care argues that Plaintiff never would have needed FMLA leave at all because her son was released from the hospital on the very day it alleges she resigned from her job.  Therefore, there was no qualifying event that entitled her to FMLA leave.

Manor Care's argument, while creative, is without merit.  There is no "hindsight" rule to FMLA leave.  The Act prohibits an employer from "interfer[ing] with . . .the attempt to exercise, any right provided" by the FMLA.  29 U.S.C. § 2615(a)(1).  This includes "discouraging an employee from using such leave. . . ." 29 C.F.R. § 825.220(b).

By providing notice of the potential need for leave, Plaintiff was attempting to exercise her rights pursuant to the FMLA.  In addition, "[t]he right to actually take twelve weeks of leave pursuant to the FMLA includes the right to declare an intention to take such leave in the future."

-12-

*Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001) (citing 29 U.S.C. § 2612(e)).  In *Skrjanc* the Sixth Circuit noted, that the FMLA covers "the right to request twelve weeks of leave pursuant to the FMLA without being fired in retaliation."  *Id.*  In this case Plaintiff was requesting leave based on her potential need for such leave and the fact that she did not know the extent of her son's illness.

Further, there is a genuine issue of material fact regarding whether Antonio's health condition met the definition of a "serious health condition" outlined in the regulations.  It is undisputed Antonio spent one night in the hospital, which constitutes an inpatient stay.  *See* 29 C.F.R. § 825.114.  Plaintiff also testified that Antonio stayed at home for a week following his discharge from the hospital, was placed on steroids, and that he underwent a series of tests and continued to see his doctor throughout the week.  Finley Dep., pp. 65-66.  If Antonio missed a week of school and visited his doctor three times that week, following his overnight visit to the hospital, as Plaintiff testified, then his condition meets the requirements of 29 C.F.R. § 825.114.  Thus, there is at least an issue of fact regarding whether Antonio had a "serious health condition" that entitled Plaintiff to leave under the FMLA.

With respect to the fourth prong of the prima facie case, Plaintiff personally informed Ms. Matchett, the Director of Nursing, that her son was in the hospital and that she did not know when she could return to work.  This is sufficient information to place Manor Care on notice of the Plaintiff's potential need for FMLA leave.  To request a leave under the FMLA, an employee does not need to use the name of the FMLA in her request for FMLA-qualifying leave.  *See Hoffman v. Professional Med Team*, 394 F.3d 414, 418 (6th Cir. 2005); 29 C.F.R. § 825.208(a)(2), 825.303(b).

-13-

The regulations prescribe what kind of notice an employee must provide regarding the need for leave when the need for leave is not foreseeable.

> (a)     When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case.  It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible.  In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.

> (b)     The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means. . . . The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.  The employer will be expected to obtain any additional required information through informal means.  The employee or spokesperson will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

29 C.F.R. § 825.303(a)-(b).  Courts in this circuit have determined that for example, where a "plaintiff informed her employer that she could not come to work because her minor daughter was sick and, after she returned to work, reiterated to her employer that her child had been sick, the plaintiff gave her employer sufficient notice that her unforeseeable leave potentially qualified under the FMLA."  *See Bryant v. Delbar Products, Inc.*, 18 F.Supp.2d 799, 805 (M.D. Tenn. 1998) (citing *Brannon v. OshKosh B'Gosh, Inc.*, 897 F.Supp. 1028 (M.D. Tenn. 1995)).  In *Bryant* the district court addressed a situation bearing some resemblance to the situation present here.  In that case the court granted summary judgment in favor of the FMLA plaintiff on the issue of liability.  18 F.Supp.2d at 807.  The court found that the employer violated the FMLA by assessing the plaintiff with a negative employment penalty for her absence when it had notice

-14-

that the absence was an FMLA-qualified leave.  *Id.*  The court noted:

> . . . [plaintiff] informed [her employer] that her son was sick by telling [her employer] that he had been hospitalized.  In contrast to the plaintiff in *Satterfield*, [plaintiff] communicated directly with [her employer] on the day she needed time off, rather than waiting twelve days, and provided [her employer] with concrete, not "meager," information as to why she needed time off.  In addition, unlike the plaintiff in *Reich*, [plaintiff] made it clear to [her employer] that her son was receiving inpatient care and gave [her employer] notice the day after her son was hospitalized.
>
> Thus, [plaintiff] provided [her employer] with adequate notice that she was requesting unforeseeable leave in a potentially FMLA-qualifying situation.  At that time, the burden shifted to [her employer] to "obtain any additional required information through informal means." 29 C.F.R. § 825.303(b).

*Bryant*, 18 F.Supp.2d at 806 (citing *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973 (5th Cir. 1998)).  Once the employee provides sufficient notice of the need for leave, the burden shifts to the employer to obtain information regarding whether the leave is potentially FMLA-qualifying. *See e.g., Fritz v. Phillips Serv. Indust., Inc.*, 555 F.Supp.2d 820, 825 (E.D. Mich. 2008); *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999); *Sahadi v. Per Se Technologies*, 280 F.Supp.2d 689, 698 (E.D. Mich. 2003).

Thus, Plaintiff had fulfilled her obligation to inform Manor Care of the potential need for leave based on her son's admission to the hospital for treatment.  The burden then shifted to Manor Care to determine if Plaintiff's leave request qualified as FMLA leave.

With respect to the fifth prong of the prima facie case, the parties sharply disagree on the facts.  By Plaintiff's account, Ms. Matchett essentially informed her that she had to sign a document on the spot indicating that she would not miss any work for the next 30 days or risk termination from her job.  In Plaintiff's view, this amounted to a choice between caring for her son or keeping her job.  As such, Plaintiff's account raises a genuine issue of material fact

-15-

regarding whether Manor Care interfered with her right to take FMLA leave.  Therefore, Manor Care's motion for summary judgment on this issue must be denied.

Similarly, Plaintiff's motion for summary judgment must also be denied because Manor Care raises a genuine issue of material fact regarding Plaintiff's version of the events.  It suggests a depiction of facts that is diametrically opposed to Plaintiff's version.  It insists that Ms. Matchett offered Plaintiff FMLA leave and did not do anything to suggest that Plaintiff's job was at risk.  Further, Ms. Matchett allegedly did not want to lose Plaintiff as a CENA.  It is unfortunate that both parties in this matter wanted Plaintiff to keep her job, but now they find themselves embroiled in this litigation.  The two contrasting versions of the events that transpired on February 12, 2007 make it impossible for the court to grant summary judgment to either side on Plaintiff's interference claim.  Manor Care provides many reasons why Plaintiff's sworn deposition testimony must be false; however, these are issues relating to Plaintiff's credibility and thus are questions for the jury.  It is not this court's job to weigh the facts on summary judgment.  Therefore, the court will **DENY** both Plaintiff's and Manor Care's motions for summary judgment on Plaintiff's FMLA interference claim.

### B.    FMLA Retaliation Claim

To demonstrate a claim under the "retaliation" or "discrimination" prong under § 2615(a)(2) a plaintiff must show that:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Arban v.*

-16-

*West Publ'g Corp.*, 345 F.3d 390, 404 (6ᵗʰ Cir. 2003)); *see also Saroli v. Automation & Modular Components*, 405 F.3d 446, 451 (6ᵗʰ Cir. 2005).  This court has outlined the way to analyze an FMLA discrimination claim that closely follows the method of analyzing other employment discrimination claims:

> There are three methods by which an FMLA plaintiff may establish a prima facie case of FMLA discrimination: by direct evidence of discriminatory intent; by circumstantial evidence of discriminatory intent through the use of the paradigm postulated in *McDonnell Douglas*; or by establishing a pattern of discrimination through the use of statistical evidence.  Most FMLA discrimination cases have involved an attempt by the plaintiff to present a prima facie case using circumstantial evidence of discriminatory intent through the familiar three-part burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). . . . Under *McDonnell Douglas*, the plaintiff has the initial burden of proving a prima facie case by a preponderance of the evidence. . . . [A plaintiff] must prove the following to make out a prima facie case: (1) he engaged in a protected activity; (2) [the defendant] took adverse employment action against him; and (3) there is a causal connection between his protected activity and the adverse employment action. . . .
> "If the plaintiff successfully proves a prima facie case, the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for the employee's discharge.'" "Once the employer carries this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence 'that the legitimate reasons offered by the [employer] were not its true reasons, but were merely a pretext for discrimination.'"

*Summerville v. ESCO Co. Ltd. Partnership*, 52 F.Supp.2d 804, 808-09 (W.D. Mich. 1999) (quoting *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6ᵗʰ Cir. 1991) (other citations omitted)).  *See also, Skrjanc*, 272 F.3d at 315-16.

The Sixth Circuit recently addressed the question of whether the FMLA prohibits an employer from discriminating against an employee for exercising the right to take FMLA leave:

> Any "right" to take unpaid leave would be utterly meaningless if the statute's bar against discrimination failed to prohibit employers from considering an employee's FMLA leave as a negative factor in employment decisions. Interpreting § 2615(a)(2)'s ban on discrimination in a manner that would permit

-17-

> employers to fire employees for exercising FMLA leave would undoubtedly run
> contrary to Congress's purpose in passing the FMLA. . . .
> In light of the foregoing, we conclude that the FMLA itself prohibits employers
> from taking adverse employment actions against employees based on the
> employee's exercise of FMLA leave.  We thus also conclude that the Department
> of Labor's interpretation of § 2615 in § 825.220 is a reasonable interpretation of
> the statute and a valid exercise of agency authority. . . . As we have explained, in
> light of the overwhelming consensus in the courts that the FMLA *does* prohibit
> such retaliation, we disagree that the plain text fails to afford employees
> protection from retaliation against the exercise of FMLA leave.  Further, the
> structure and purpose of the Act, as well as its legislative history, support our
> interpretation that Congress intended the FMLA to prohibit employers from
> considering an employee's use of FMLA leave as a negative factor in employment
> decisions.

*Bryant v. Dollar General Corp.*, 538 F.3d 394, 401-02 (6th Cir. 2008).

Reviewing the facts in the light most favorable to Plaintiff, she argues that she engaged in a protected activity of requesting a need for FMLA leave and that Ms. Matchett required her to sign a document indicating that she would not miss any time from work for 30 days immediately after her request for FMLA leave.  Thus, in considering Manor Care's motion for summary judgment, the court concludes that Plaintiff has stated a prima facie case of FMLA retaliation. She engaged in the protected activity of attempting to assert rights pursuant to the FMLA, and she suffered the immediate adverse action of being provided with an ultimatum leading her to believe that she could retain her job only if she agreed not to miss any more work, despite the fact that she needed leave to care for her son.  The adverse action allegedly occurred immediately following Plaintiff's request for leave.  Thus, the temporal proximity between the leave request and the alleged adverse action is enough to create a causal connection between the request and the adverse action.  *See Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007); *Skrjanc*, 272 F.3d at 314.

-18-

When the burden shifts to Manor Care to provide a legitimate, non-discriminatory reason for the employment action, the analysis becomes more complicated due to the fundamental factual dispute between the parties.  Manor Care insists that it did not give Plaintiff a document to sign indicating anything with respect to a requirement that she work without future absences. It contends that Ms. Matchett immediately offered Plaintiff FMLA leave and that she wanted to accommodate Plaintiff, as well as retain her on the staff at Manor Care.  Thus, Manor Care does not provide a legitimate, non-discriminatory reason for the action; instead, it contends no adverse action occurred and that Plaintiff resigned.  Because there is a material dispute as to whether the alleged adverse action occurred, the court must deny both Manor Care and Plaintiff's motions for summary judgment.

If an employee "voluntarily resigns, he cannot claim that he suffered an adverse employment decision under the . . . FMLA."  *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999).  Although the FMLA does not define the term resign, the Sixth Circuit "has held that when an employment law statute is silent as to a term's meaning, courts should identify the disputed term's meaning as it is defined under common law principles of agency and the master-servant relationship and incorporate that definition of the term into the statute."  *Id.* (citing *Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir. 1998)).

In this case, the question of whether Plaintiff voluntarily resigned or whether Ms. Matchett presented her with an ultimatum that constituted an adverse action must be resolved by a jury.  Therefore, the court will **DENY** both Manor Care's and Plaintiff's motions for summary judgment on Plaintiff's FMLA retaliation claim.

-19-

### C.     Mitigation

Defendant finally claims that this court should grant summary judgment on Plaintiff's

failure to mitigate her damages.  In analyzing mitigation claims, the Sixth Circuit has stated that:

> we have held that the defendant bears the burden of establishing a plaintiff's lack
> of diligence in mitigation or the amount of her interim earnings.  A defendant
> satisfies its burden only by establishing that there were substantially equivalent
> positions available and that the plaintiff did not use reasonable care and diligence
> in seeking such positions.  "A claimant is only required to make reasonable efforts
> to mitigate damages, and is not held to the highest standards of diligence."
> Finally, the reasonableness of an employee's effort "should be evaluated in light
> of the individual characteristics of the claimant and the job market."

*Killian v. Yoruzu Automotive Tennessee, Inc.*, 454 F.3d 549, 557 (6th Cir. 2006) (quoting *Rasimas*

*v. Michigan Dep't of Mental Health*, 714 F.2d 614, 623-24 (6th Cir. 1983)).

In addition, a substantially equivalent position is one that "afford[s] the claimant virtually

identical promotional opportunities, compensation, job responsibilities, working conditions, and

status."  *Rasimus*, 714 F.2d at 624.

Manor Care claims that it is entitled to summary judgment on this issue because the

evidence reveals that Plaintiff did not apply for a position with the Veterans' Administration in

accordance with her deposition testimony.  They also claim that she willingly accepted a part-

time position as a CENA and that she intentionally sought a reduced schedule.  Plaintiff testified

in her deposition that she did search for full-time employment, but was unable to find such a

position.  *See* Finley Dep., pp. 80-81.  Thus, there appears to be an issue of fact regarding

Plaintiff's efforts to find a substantially equivalent position.

Further, Manor Care has not fulfilled its burden of demonstrating that substantially

equivalent employment was available in the relevant market.  There is no evidence in the record

regarding what CENA positions were available in the area with "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." *Rasimus*, 714 F.2d at 624. Thus, Manor Care's motion for summary judgment on this issue must be **DENIED**.

## IV. Conclusion

For the reasons stated *supra*, Plaintiff's motion for summary judgment and Defendant's motion for summary judgment will be **DENIED**. The court further concludes that because a fundamental issue of material fact exists in this case regarding Plaintiff's claims, it is not necessary for this court to schedule an oral argument on the issues. Therefore, Plaintiff's request for oral argument will be **DENIED**.

A separate order will enter.

ENTERED: 10/29/08

*/s/ R. Allan Edgar*

R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE
